**WEIGHT–RITE GOLF CORPORATION, et al., Plaintiffs,**

**v.**

**UNITED STATES GOLF ASSOCIATION, Defendant.**

**No. 90–308 CIV–T–10(B).**

United States District Court, M.D. Florida, Tampa Division.

March 12, 1991.

---

Claude Hines Tison, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiffs.

James Maxwell Landis, Thomas Howard Duke, Foley & Lardner, Tampa, Fla., William K. Bennett, Bradham & Bennett, P.A., St. Petersburg, Fla., for defendant.

## ORDER

NEWCOMER, District Judge, Sitting By Designation.

This is an action for declaratory, injunctive and monetary relief by Plaintiffs, Weight–Rite Golf Corporation and Weight–Rite Leisure UK Ltd., against the United States Golf Association ("USGA").[1] The action arises out of the USGA's determination that a shoe manufactured and distributed by the Plaintiffs does not conform to Rule 14-3 of the Rules of Golf published by the USGA. Plaintiffs contend that the USGA's action violates sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; the Florida Antitrust Act, Chapter 542, Florida Statutes; and the common law of slander and intentional interference with business relationships. Before the Court are motions by the USGA for summary judgment (doc. 40), for leave to reply (doc. 55),[2] and to strike the affidavit of Plaintiffs' expert submitted in response to the motion for summary judgment (doc. 53).

### I. Motion to Strike

The USGA moves to strike from the summary judgment record the affidavit of Samuel J. Kursh, Plaintiffs' expert witness. The USGA states that Plaintiffs failed to identify Mr. Kursh as a prospective expert

---

1. Although the complaint also names various officers of the USGA, these Defendants were dismissed by stipulation of the parties pursuant to Rule 41(a)(1), F.R.Civ.P.

2. The USGA's motion for leave to file a reply is GRANTED.

witness and failed to identify the subject matter of his testimony within the time frame required by the Court's August 8, 1990 scheduling Order and Rule 26(e)(1)(B), F.R.Civ.P. The USGA also contends that the affidavit does not satisfy the requirements of Rule 56(e), F.R.Civ.P.

■ The Court's scheduling Order of August 8 required the disclosure of the identity of prospective expert witnesses, and the subject matter of the expert's testimony, by February 1, 1991. Plaintiff filed a copy of a facsimile transmission of the Kursh affidavit as an exhibit to Plaintiff's response to Defendant's motion for summary judgment. Although the notary signature on the Kursh affidavit is dated February 2, 1991, Plaintiff's response was filed and served by mail on February 1, 1991, and the facsimile transmission bears a date of February 1. It thus appears that Plaintiffs disclosed Mr. Kursh's identity as an expert and the subject matter of his testimony within the time frame established by the Court's August 8 scheduling Order.

The USGA served a set of interrogatories on Plaintiffs in September 1990 requesting information on Plaintiffs' expert witnesses as provided for in Rule 26(b)(4)(A)(i). In November 1990, Plaintiffs responded that they had no expert witnesses at that time. The USGA states that Plaintiffs had not supplemented their interrogatory answer as of January 15, 1991 as required by Rule 26(e).

Rule 26(e) imposes a "duty to seasonably supplement" interrogatory answers relating to expert witnesses. The Court concludes that Plaintiffs have complied with Rule 26(e) by serving a copy of the Kursh affidavit on the USGA less than two weeks after Mr. Kursh was retained and within the time frame established in the Court's August 8 scheduling Order.

The USGA also contends the affidavit should be stricken based on Rule 56(e) because the affidavit does not affirmatively show that Mr. Kursh is competent to testify and does not set forth specific facts in support of his conclusions. The Court concludes that, for purposes of the summary judgment analysis, the affidavit sufficiently establishes Mr. Kursh's competency to testify as an expert on the issue of injury to competition. Whether the affidavit contains sufficient factual allegations in support of Mr. Kursh's opinions will be addressed in the context of the USGA's motion for summary judgment.

Accordingly, the USGA's motion to strike the Kursh affidavit in its entirety is due to be denied.

## II. Motion for Summary Judgment

■ Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden is met, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. The moving party is entitled to judgment as a matter of law "when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof." *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). However, the evidence must be considered in a light most favorable to the nonmoving party and all reasonable inferences drawn in the non-movant's favor. *Id.*

### Factual Background

The USGA is a non-profit association of golf courses and golf clubs. The USGA publishes the Rules of Golf and applies the Rules in the thirteen national championships it conducts each year. The Rules of Golf limit the kinds of equipment that a golfer may use in an event that is played pursuant to the Rules. The purpose of the Rules is "to preserve the traditions of the game, and to insure that a player's score is

the product of his skill, rather than his equipment." [3]

Other entities that conduct golf competitions, such as the PGA Tour, Inc., are separate from and independent of the USGA. However, the Rules, as interpreted by the USGA, are typically followed in major amateur and professional golf tournaments.

Plaintiffs manufacture and distribute a golf shoe with a patented sole design which incorporates an angled wedge on the outside of the sole. The shoes apparently assist golfers in distributing their weight so as to better resist the tendency to push away from the ball during the swing. On March 1, 1990, Frank Thomas, the Technical Director of the USGA, and his staff determined that use of the Weight–Rite shoes would violate Rule 14–3 of the Rules of Golf. Rule 14–3 provides that a "player shall not use any artificial device or unusual equipment ... which might assist him in gripping the club, in making a stroke or in his play."

The USGA notified Plaintiffs and other professional golf associations of its determination on March 7, 1990. Following the USGA's determination, a number of retailers stopped ordering Plaintiffs' shoes and returned the stock they had previously ordered. Plaintiffs have since commenced marketing their product directly to consumers.

Weight–Rite appealed the USGA staff determination to the Equipment Standards Committee and to the USGA Executive Committee. Both committees determined that the Weight–Rite shoe did not conform to Rule 14–3 of the Rules of Golf.

**A. Sherman Act Section 1 (Count I)**

■ To establish a violation of section 1 of the Sherman Act, a plaintiff must prove two elements: (1) a conspiracy and (2) an unreasonable restraint of trade. *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284, 293 (5th

Cir.1988). A particular restraint may be adjudged unreasonable

> either because it fits within a class of restraints that has been held to be '*per se*' unreasonable, or because it violates what has come to be known as the 'Rule of Reason,' under which the 'test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.'

*F.T.C. v. Indiana Federation of Dentists*, 476 U.S. 447, 458, 106 S.Ct. 2009, 2017, 90 L.Ed.2d 445 (1986) (citation omitted).

*1. Conspiracy*

■ Plaintiffs do not contend that the USGA and its members conspired to adopt the interpretation of Rule 14–3 challenged by Plaintiffs. Rather, Plaintiffs contend that the USGA enforces its interpretation of the Rules of Golf on its members who must, therefore, disqualify any golfer using equipment which the USGA Executive Committee has determined does not conform to the Rules of Golf.

Plaintiffs have identified no direct evidence in the record which shows that USGA members must disqualify golfers from play on their courses if the golfer uses non-conforming equipment. Plaintiffs also have identified no record evidence to show that the USGA has taken adverse action against a member for allowing a golfer to use non-conforming equipment on the member's course.

Plaintiffs have presented evidence that the scorecards at most USGA courses state that "USGA rules govern all play." [4] Plaintiffs contend that USGA enforcement may be inferred based on the statement on the scorecards and based on a provision in the USGA by-laws which provides, in part, that all USGA members are required to "accept and enforce all rules and decisions of the [USGA] Executive Committee" as a condition of membership.

The USGA has submitted a complete copy of the USGA by-laws and the affidavit

---

3. Affidavit of Frank Thomas, Technical Director of the USGA.

4. Kursh affidavit at 6.

of David Fay, USGA Executive Director (attached to Doc. 56). The Fay affidavit states that when the by-laws refer to the Rules of Golf, the full capitalized title "Rules of Golf" is used. A review of the by-laws discloses that the full capitalized title is used in Articles IV and VII. The affidavit also states that although the USGA applies its interpretation of the Rules of Golf in the thirteen national championships it conducts each year, the USGA has never required its members to enforce the USGA's interpretation of the Rules of Golf in competitions conducted by its members.

The Court concludes that a fact finder could not reasonably find, based on the evidence in the record, that the USGA requires member courses to enforce the USGA's interpretation of the Rules of Golf in tournaments conducted by its members. Accordingly, the USGA is entitled to summary judgment on Count I.

### 2. Unreasonable Restraint of Trade

█ The USGA also is entitled to summary judgment on Count I because the Plaintiffs have not created a genuine issue of fact as to whether the USGA has unreasonably restrained trade. In the Order entered on September 12, 1990, denying Plaintiffs' motion for a preliminary injunction, the Court concluded that the conduct challenged by the Plaintiffs did not fit within the class of restraints held to be *per se* unlawful. To withstand the USGA's motion for summary judgment, therefore, Plaintiffs must present evidence from which a fact finder could reasonably find a violation of the Rule of Reason.

█ Under the Rule of Reason,
The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint

is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts.

*Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918).[5] Thus, to show a violation of the rule of reason, a plaintiff must show that the challenged conduct will substantially restrain competition in a relevant product market. *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 421–22 (11th Cir.1984).

As a threshold matter, the Court observes that Plaintiffs have not presented evidence to clearly define the relevant product market. The Plaintiffs' memorandum refers to the golf equipment industry and the golf shoe industry, as does the affidavit of Samuel Kursh. Moreover, it is unclear precisely what the relevant geographical boundary is, although Plaintiffs' memorandum suggests that it is the United States. This lack of clarity is a reflection of the lack of evidence presented in support of Plaintiffs' claims. The Court will assume that Plaintiffs define the relevant product market as the market for golf shoes in the United States. Accordingly, Plaintiffs must show injury to competition in that market.

Plaintiffs contend that the USGA has the power to bar entry into the golf shoe industry in the United States because the USGA's interpretation of the Rules of Golf is followed in virtually all major professional and amateur golf tournaments. They contend further that the USGA has exercised its power in such a way as to restrain competition in the industry.

Plaintiffs have presented evidence that the USGA's interpretation of the Rules of Golf are followed in virtually all major professional and amateur golf tournaments in the United States. Plaintiffs also have

---

**5.** The Court observed that evidence of intent is relevant "not because a good intention will save an otherwise objectionable regulation or the re-

verse; but because knowledge of intent may help the court to interpret facts and to predict consequences." *Id.*

presented evidence that, after the USGA determined that the shoe did not conform to Rule 14–3, some retailers returned their stock of Weight–Rite shoes, and many retailers discontinued ordering more stock.[6]

 However, showing merely injury to oneself as a competitor is insufficient.

[I]njury to a competitor need not result in injury to competition. The use of unfair means in substituting one competitor for another without more does not violate the antitrust laws.... [The plaintiff] must show harm to competition in general, as well as its own injury as a competitor.

*Id.*

 As evidence of injury to competition, Plaintiffs have submitted the affidavit of Samuel J. Kursh. Mr. Kursh states his conclusion that the USGA has restrained competition in the golf equipment industry generally, and the golf shoe industry in particular, by its interpretations of the Rules of Golf. However, a party may not avoid summary judgment solely on the basis of an expert's opinion affidavit which does not provide specific facts from the record to support its conclusions. *Evers v. General Motors Corp.*, 770 F.2d 984 (11th Cir.1985) (Federal Rules of Evidence 703 and 705 do not alter the requirement of Rule 56(e) that an affidavit must set forth specific facts); *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir.1985). Mr. Kursh states that he has engaged in an ongoing program during the past year to study the golf equipment industry. He states that the primary channel for distribution of golf shoes is through pro shops, specialty shoe stores and sporting good stores and that financial success in the golf equipment industry generally depends on making a product available in pro shops. He also testifies that the stores in this classic distribution channel general-

ly stock a limited number of different lines and that product differentiation is necessary for a manufacturer to obtain shelf space.

Mr. Kursh relies on information obtained by the National Sporting Goods Association and the Darrell Survey to show that the golf shoe industry is a highly concentrated market. According to these sources, the top four or five firms have dominated the market for golf shoes from 1986 through 1989. Mr. Kursh states that industry leaders in the golf shoe market have competed primarily on the basis of style and appearance so as not to upset the overall industry structure.

Plaintiffs have presented evidence that the USGA currently has 5,296 member clubs and 1,966 member courses in the United States. Plaintiffs contend that USGA members are required by the USGA to disqualify any golfer using equipment which the USGA Executive Committee has determined does not conform to the Rules of Golf.[7] Plaintiffs contend further that "it requires no great exercise of imagination to conclude that pro and specialty shops will not allocate shelf space to products that subject their users to disqualification in any round of golf played on a member course or under the auspices of a member club." Mr. Kursh thus opines that the USGA's interpretation of the Rules of Golf has barred the entry of competitors into the market and thereby reinforced the concentrated market structure.

However, Mr. Kursh identifies only one instance of USGA Rule interpretation other than that associated with the Weight–Rite shoe: the USGA's determination that Ping EYE 2 golf clubs were non-conforming. Mr. Kursh states that Ping's market share in the golf club market declined following the USGA's determination.

---

6. Plaintiffs have not presented detailed evidence showing the number of retailers taking such action. Plaintiffs have presented evidence, however, that enough retailers took this action that the Plaintiffs were required to resort to a direct-mail marketing campaign.

7. The Court already has determined that Plaintiffs have failed to raise a genuine issue of fact with respect to the concerted action element of a section 1 claim. The Court accepts this contention as true, however, for purposes of determining whether Plaintiffs have created a genuine issue of fact with respect to the injury to competition element.

██ The affidavit contains no specific facts to support the conclusion that the USGA's determination that the Weight–Rite shoe does not conform to the Rules of Golf substantially restrained competition in the golf shoe market in the United States. There also is no other evidence in the record to support this conclusion. At most, Plaintiffs have presented evidence from which a fact finder could find that the USGA has the power to substantially decrease the marketability of certain types of golf shoes and that the marketability of Plaintiffs' shoe (as currently designed and manufactured) has been substantially diminished. Evidence that a single competitor has been removed from a relevant product market, in and of itself, is insufficient to establish a violation of the rule of reason. *See L.A. Draper & Son*, 735 F.2d at 422.

Plaintiffs have not presented evidence from which a fact finder could find that the USGA's determination has significantly restrained the operation of the free market with respect to the golf shoe industry. Plaintiffs also have not submitted evidence to controvert the USGA's showing that the purpose of Rule 14–3 of the Rules of Golf is to "preserve the traditions of the game, and to insure that a player's score is the product of his skill, rather than his equipment." [8] The USGA is, therefore, entitled to summary judgment on Plaintiffs' claim under section 1 of the Sherman Act.

**B. Sherman Act Section 2 (Count II)**

In their response to the USGA's motion for summary judgment, Plaintiffs state that they do not oppose the motion with respect to their monopolization claim under section 2 of the Sherman Act. Accordingly, the USGA is entitled to summary judgment with respect to Count II of the complaint.

**C. Florida Antitrust Act (Count III)**

Section 542.32, Fla.Stat. (1989) provides that "in construing [the Florida Antitrust Act], due consideration and great weight [should] be given to the interpretations of the federal courts relating to comparable federal antitrust statutes." The USGA contends that resolution of Counts I and II control Plaintiffs' Florida Antitrust Act claim and Plaintiffs agree. Having granted summary judgment with respect to Counts I and II, the USGA also is entitled to summary judgment on Count III.

**D. Defamation (Count IV)**

██ Under Florida law, a plaintiff in a defamation action must prove that the defendant published a false statement or a statement with false implications. *Brown v. Tallahassee Democrat*, 440 So.2d 588, 589–90 (Fla. 1st DCA 1983). "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983). A statement of opinion is, therefore, not actionable. *See Zambrano v. Devanesan*, 484 So.2d 603 (Fla. 4th DCA 1986).

██ Plaintiffs' claim for defamation is based on statements made by Frank Thomas to officials of the PGA, PGA Tour and the LPGA that the USGA had determined that the Weight–Rite shoe did not conform to Rule 14–3 of the Rules of Golf.[9] Rule 14–3 provides that a "player shall not use any artificial device or unusual equipment ... which might assist him in gripping the club, in making a stroke or in his play."

It is undisputed that the USGA determined that the Weight–Rite shoe did not conform to Rule 14–3. Thus, the statements by Mr. Thomas were factually true. Plaintiffs suggest that the statements contain an implied assertion that the Weight–Rite shoe does not conform to Rule 14–3 and that this implied assertion is false. Interpretation of Rule 14–3 clearly involves the exercise of some judgment. Whether the Weight–Rite shoe actually conforms to Rule 14–3 cannot, therefore, be demonstrably proven true or false. Such a statement is a non-actionable opinion.

---

**8.** Affidavit of Frank Thomas.

**9.** See Plaintiffs' answer to USGA interrogatory number 17.

 Moreover, under Florida law, "a statement 'made by one who has a duty or interest in the subject matter to one who has a corresponding duty or interest' is qualifiedly privileged." *McCurdy v. Collis*, 508 So.2d 380, 382 (Fla. 1st DCA 1987). The allegedly defamatory statements were made by Mr. Thomas to other golf organizations in relation to whether the Weight–Rite shoe conformed to the Rules of Golf. Accordingly, these statements are qualifiedly privileged unless they were made with actual malice. *Rosenberg v. American Bowling Congress*, 589 F.Supp. 547, 552 (M.D.Fla.1984) (citing *Loeb v. Geronemus*, 66 So.2d 241 (Fla.1953)). Plaintiffs have identified no evidence in the record from which a fact finder could reasonably find that the USGA acted with actual malice toward the Plaintiffs. Accordingly, the USGA is entitled to summary judgment on Count IV.

**E. Interference with Contract and Business Relationships (Counts V and VI)**

 To establish a claim of tortious interference, a plaintiff must prove, *inter alia*, "an intentional and unjustified interference." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla.1985). Generally, an interference is intentional

> if the person interfering knows of the business relationship with which he is interfering, knows he is interfering with that relationship, and desires to interfere or knows that the interference is substantially certain to occur as a result of his action.

*McCurdy v. Collis*, 508 So.2d 380, 383 n. 2 (Fla. 1st DCA 1987) (quoting Florida Standard Jury Instruction (Civil) MI 7.2). Once intent is shown, a plaintiff must also show that the interference was unjustified. This determination is based on the defendant's "conduct, its motive, and the interests it sought to advance." *Smith v. Emery Air Freight Corp.*, 512 So.2d 229, 230 (Fla. 3rd DCA 1987) (citing Restatement (Second) of Torts § 767 (1979)).

Plaintiffs contend that a reasonable fact finder could infer an intent to harm the Plaintiffs from proof that the USGA acted with knowledge that an interference with Plaintiffs' business and contractual relations was substantially certain to occur as a result of its determination that the Weight–Rite shoe did not conform to Rule 14–3. However, Plaintiffs have identified no evidence in the record from which a fact finder could reasonably find an *unjustified* interference. Moreover, as previously determined, the statements of Mr. Thomas are qualifiedly privileged. Accordingly, the USGA also is entitled to summary judgment on Counts V and VI of the complaint.

Upon due consideration, therefore, there is no genuine issue of material fact for trial and the USGA is entitled to summary judgment as a matter of law. The Clerk is directed to enter judgment for the USGA and against the Plaintiffs, costs to be assessed according to law.

IT IS SO ORDERED.

DONE and ORDERED.