Loretta D. **CHERRY**, as Personal Representative of the Estate of Eddie Ronald Cherry, Plaintiff,

v.

Sheriff Lawrence W. **CROW** in his official capacity as Sheriff of Polk County, Florida; and Prison Health Services, Inc., a Delaware corporation; and Frank M. Smith, Individually, Defendants.

No. 93–1643–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

March 7, 1994.

James C. Valenti, Gibson & Lilly, Lake Wales, FL, for plaintiff.

Hank B. Campbell, Robert Lewis Trohn, Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Lakeland, FL, and James Orrin Williams, Jr. and Carri L. Sipowski, Derrevere & Williams, West Palm Beach, FL, for defendants.

### ORDER DENYING MOTIONS TO DISMISS AND MOTION TO STRIKE

KOVACHEVICH, District Judge.

This cause is before the Court on motions to dismiss and motion to strike filed by Defendants, Prison Health Services, Inc. ("PHS") and Frank M. Smith ("Smith") (Dkt. 11). Plaintiff's Complaint (Dkt. 1) and Amended Complaint (Dkt. 3) allege deprivation of Plaintiff's decedent's civil rights brought pursuant to 42 U.S.C. § 1983, joined with supplemental state claims for breach of contract and negligence. As the Amended Complaint serves only to elaborate on Mrs. Cherry's position as personal representative of the estate of the deceased, Eddie Ronald Cherry, (Dkt. 3, Paragraph 2), any reference to the "Complaint" in this order will refer to the complaint as amended.

### FACTS

The Sheriff of Polk County ("Sheriff"), a county constitutional officer of the State of Florida, employed PHS to provide total health care services for the inmates/detainees housed within the county correctional system facilities, which include the Polk County Jail ("Jail") and the Polk County Jail Annex ("Annex").

On December 22, 1992, Polk County Sheriff's Department ("PCSD") employees booked Eddie Ronald Cherry ("Mr. Cherry") into the Jail to begin serving a 30-day sentence for driving under the influence of alcohol. At the time of incarceration, Mr. Cherry informed the PHS medical staff that he consumed approximately one case of beer daily. Over the next two days, Mr. Cherry repeatedly requested medical attention for symptoms related to alcohol withdrawal, both at the Jail and the Annex, where he had been transferred on December 23, 1992.

Mrs. Cherry notified a PCSD employee, by telephone on December 25, 1992, that her husband, Mr. Cherry, had a history of delirium tremens ("DT's")[1] during alcohol withdrawal and that he was in immediate need of a physician's attention.

Approximately two hours later, the inmates sharing Mr. Cherry's cell asked PCSD employees to check on Mr. Cherry's condition. PCSD employees found Mr. Cherry in his cell, hallucinating and shaking violently. The PCSD employees notified PHS Nurse Gill, who examined Mr. Cherry and reported his symptoms of DT's to PHS Nurse Frank Smith ("Smith"). Nurse Smith requested that Mr. Cherry be sent to the Infirmary for observation.

At the Infirmary, a PCSD employee shackled Mr. Cherry, who was still hallucinating, to his bed, with the knowledge and acquiescence of Smith. At approximately 6:00 a.m. on December 26, 1992, while still suffering from hallucinations associated with the DT's, Mr. Cherry either walked or jumped off the end of his bed. Because the leg shackle did not allow his feet to advance beyond the top of the bed, Mr. Cherry landed head first on the concrete floor. Mr. Cherry died five days later as a result of his injuries.

### MOTIONS TO DISMISS

A. Standard

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The effectiveness of this form of "notice pleading" stems from the liberal opportunities for discovery and other pre-trial procedures under the Federal Rules. *Conley,* 355 U.S. at 47–48, 78 S.Ct. at 102–103. Further, when evaluating a motion to dismiss, the trial court must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Plaintiff alleges the following causes of action: Count I—negligence against PHS; Count II—breach of contract against PHS; Count III—§ 1983 action against PHS;

---

1. Delirium tremens are a special and sometimes lethal form of delirium induced by the withdrawal of alcohol, following a prolonged period of alcoholic intoxication. *Blakiston's Gould Medical Dictionary* (4th ed. 1979).

Count IV—negligence against Polk County; Count V—§ 1983 action against Polk County; and Count V (sic)—§ 1983 action against Frank M. Smith. At issue in Defendants' motions to dismiss are Counts II, III, and V (sic).

## B. Count II—Breach of Contract Against PHS

■ Defendants assert that no cause of action exists against PHS for breach of contract, in that Plaintiff's decedent was not an intended third party beneficiary of the employment contract between PHS and PCSD. Based upon the authorities cited by Defendants, the Court finds sufficient evidence of an intended third party beneficiary relationship to withstand this motion to dismiss.

Defendants rely upon *Bozeman v. Hernando County*, 548 So.2d 300 (Fla. 5th DCA 1989) for the proposition that a patient of an emergency room group had no cause of action for personal injuries as a third party beneficiary of the contract between the hospital and emergency room physicians. The specific holding in *Bozeman*, however, dismisses the third party beneficiary claim "because the complaint, *standing alone*, indicates that [the patient] was at most an incidental third party beneficiary of the stated employment contract." *Id.* at 301. (emphasis added)

As pointed out by Plaintiff, allegations of the third party beneficiary status of Mr. Cherry do not rest solely on the complaint. Documents attached to the complaint and made a part thereof in accordance with Fla. R.Civ.P. 1.130(b) outline the scope of services to be provided by PHS. Specifically, the Health Services Agreement between PSCD and PHS states:

WHEREAS, the SHERIFF has the statutory and constitutional duty and responsibility to provide necessary and proper medical, psychiatric, dental and other health care services for persons remanded to his care, custody and control within the county correctional system ... (Exhibit A-1 to complaint, page 1, paragraph 2)

WHEREAS, the SHERIFF, is desirous of contracting with PHS and PHS is desirous of contracting with the SHERIFF to pro-

vide total health care services *for the inmates/detainees* (including federal and state prisoners) housed within the county correctional system facilities described above; .... (Exhibit A-1 to complaint, page 2, paragraph 2). (emphasis added)

The right of a third party beneficiary to bring suit under contract as outlined in *American Surety Co. of New York v. Smith*, 130 So. 440 (Fla.1930) remains clear guidance today. The Supreme Court recognized:

Where, therefore, it is manifest from the nature or terms of a contract that the formal parties thereto intended its provisions to be for the benefit of a third party, as well as for the benefit of the formal parties themselves, the benefit to such third party being the direct and primary object of the contract, or amongst such objects, such third party may maintain an action on the contract even though he be a stranger to the consideration. *Id.* at 441.

The Court finds PCSD and PHS intended, as a result of their agreement, to benefit persons situated such as Plaintiff's decedent. Accordingly, Defendants' motion to dismiss Count II is DENIED.

## C. Count III and Count V(sic)—§ 1983 Claims against PHS and Smith

■ In their motions to dismiss Plaintiff's claims against PHS and Smith brought under 42 U.S.C. § 1983, Defendants suggest that these complaints lack sufficient specificity to withstand dismissal. However, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court specifically rejected the developing requirement for "heightened pleadings" in § 1983 cases as being contrary to the liberal system of "notice pleading" set up by the Federal Rules. *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1163. Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

■ The Court is not unmindful that it is generally necessary to show a persistent and widespread practice to establish a policy or custom sufficient to impose municipal liabili-

ty, and that normally, random acts or isolated incidents are insufficient to establish such custom or policy. *Burnette v. Ciolino,* 750 F.Supp. 1562, 1564 (M.D.Fla.1990), citing *Depew v. City of St. Mary's, Georgia,* 787 F.2d 1496, 1499 (11th Cir.1986). The Eleventh Circuit notes, however, that the frequency of constitutional violations may, in itself, provide sufficient circumstantial evidence of municipal liability. *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1556 (11th Cir.1989).

At this point in the proceedings, the Court finds that Plaintiff has sufficiently stated the necessary allegations, notably (1) that the conduct alleged was committed under color of law; and (2) that the conduct deprived the plaintiff of a constitutional or federal right. *Quinones v. Durkis,* 638 F.Supp. 856, 859 (S.D.Fla.1986). Since the Court finds *Leatherman* dispositive on the sufficiency of the pleadings, no evaluation of the substantive arguments regarding specific factual allegations is required. To participate in such an exercise would be fruitless, as a sufficiently pleaded but not "sufficiently evidenced" allegation would still survive a motion to dismiss under *Leatherman.*

As all facts asserted by Plaintiff must be construed as true, the Court cannot say that beyond a doubt Plaintiff can prove no set of facts that would entitle her to the requested remedies. Accordingly, Defendants' motions to dismiss Counts III and V(sic) are DENIED.

### MOTION TO STRIKE

■ Having determined that Defendants' motions to dismiss are properly denied, the Court turns to Defendants' motion to strike Plaintiff's allegations regarding prior incidents at the Jail.

Contained in paragraphs 35 to 40 of Plaintiff's complaint are allegations regarding the deaths of two inmates at the Jail while under the medical supervision of PHS. Specifically, on March 17, 1992, Fernando Garcia ("Garcia"), known by PHS at the time to be a diabetic, died at the Jail after PHS failed to provide him with insulin for three days. The second incident occurred on June 13, 1992, when Daniel Zuniga ("Zuniga") committed suicide on his third attempt in the Jail. De-

spite his previous attempts, PHS had not classified Zuniga as a serious suicide risk, did not monitor his condition and failed to remove the bedsheets with which Zuniga hung himself. Plaintiff alleges that the circumstances surrounding these deaths were known to PHS and PCSD prior to Mr. Cherry's injuries.

■ While Fed.R.Civ.P. 12(f) provides, in pertinent part, that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," the Court recognizes that such motions are not favored, and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 570 (S.D.Fla. 1978), citing *Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir.1962). This conscious restraint by the court is well-founded in its recognition of the practical difficulty of deciding cases without a factual record. *Augustus,* 306 F.2d at 868. In evaluating a motion to strike, the court must treat all well-pleaded facts as admitted and cannot consider matters beyond the pleadings. *U.S. Oil Co., Inc. v. Koch Refining Co.,* 518 F.Supp. 957, 959 (E.D.Wis.1981).

Defendants specifically identify Paragraph 40 of the complaint as "so scandalous in its suggestion that PRISON HEALTH SERVICES, INC. intentionally ignored the inmates in Polk County as to warrant being stricken on its face." The Court finds Defendants' reliance on *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654 (7th Cir.1992) misplaced. In *Talbot,* the court struck plaintiffs' allegations that defendant deliberately allowed a salmonella outbreak in order to eliminate plaintiffs jobs because "the allegations were devoid of any factual basis." *Id.* at 655. Such is not the case here.

Although Defendants also characterize the prior incidents as "irrelevant" and "immaterial," their arguments appear to focus on the anticipated inadmissibility of the evidence under Fed.R.Evid. 404(b). The Court concurs with Plaintiff that Defendants have mis-

understood the import of such prior incident evidence in a § 1983 claim.

Rule 404(b) provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...*" (emphasis added) This rule is inclusive, not exclusive, and emphasizes admissibility. *Government of Virgin Islands v. Edwards,* 903 F.2d 267, 270 (3rd Cir.1990).

The Court finds the supporting cases cited by Defendants to be distinguishable. In both *Hopson v. Fredericksen,* 961 F.2d 1374 (8th Cir.1992) and *Morgan v. City of Marmaduke,* 958 F.2d 207 (8th Cir.1992), plaintiffs sought to introduce evidence of prior incidents involving specifically named police officers to demonstrate the propensity of such officers to act in conformance with this prior behavior. *Hopson,* 961 F.2d at 1379, *Morgan,* 958 F.2d at 210. In *Hopson,* plaintiff announced his intended utilization of such prior incidents to "illustrat[e] the proclivity of defendants to engage in the conduct alleged within the plaintiff's complaint." *Hopson,* 961 F.2d at 1379. Further, in *Morgan,* the prior incident involved the particular police officer while he was employed by another city's police department, and was offered to demonstrate that this individual officer had a policy or custom of "using his patrol car ... as a dangerous weapon against fleeing motorcyclists." *Morgan,* 958 F.2d at 210. In each instance, the courts properly excluded the proffered evidence as violative of the rule's prohibition against evidence offered solely to show propensity.

In the instant case, Plaintiff alleges the prior incidents not for the purpose of establishing that certain employees have a propensity to violate constitutional rights, but to evidence a policy or custom of PCSD and PHS. In fact, Plaintiff does not even implicate the same PHS employees in the events involving Garcia and Zuniga.

The Supreme Court provided four guidelines to address concerns of undue prejudice resulting from the admission of prior bad act evidence under 404(b). *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). To protect against unfair prejudice, the proffered evidence: (1) must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502.

Here, Plaintiff offered the prior incidents to establish a factual basis for allegations of policy or custom necessary to sustain a claim for municipal liability. Municipal liability contemplated under § 1983 is premised on proof by the plaintiff that his constitutional rights were violated as the result of an official municipal policy or custom. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690–691, 694, 98 S.Ct. 2018, 2036–2037, 56 L.Ed.2d 611.

A trial court has "considerable leeway" in both the Rule 404(b) relevancy determination and the balancing test under Rule 403. 2 Weinstein & Berger, *Weinstein's Evidence* at 404–475 (1992). Even though facts supporting a party's claim need not be set forth in detail, the Court finds the factual allegations regarding prior related incidents as proper and relevant. The Court denies Defendants' motion to strike. Accordingly, it is

ORDERED that Defendants' Motions to Dismiss (Dkt. 11) are DENIED. Defendants' Motion to Strike (Dkt. 11) is also DENIED.

DONE and ORDERED.