**John HOPSON a/k/a/ Kenneth Hayes, Appellant,**

v.

**Nicholas FREDERICKSEN, Appellee.**

**No. 91–1149.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1992.

Decided April 20, 1992.

Daniel R. Begian, St. Louis, Mo., argued, for appellant.

Michael A. Garvin, St.. Louis, Mo., argued, for appellee.

Before ARNOLD, Chief Judge, McMILLIAN and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Plaintiff-appellant John Hopson (Hopson) appeals from the judgment and order of the district court[1] affirming the jury's verdict in favor of defendant-appellee Nicholas Fredericksen (Fredericksen), a police officer, on Hopson's § 1983 claims of excessive force during arrest and deliberate indifference to Hopson's serious medical needs, and from the trial court's directed verdict in favor of Fredericksen's codefendant and partner, police officer Robert Thomure, at the close of Hopson's evidence. Hopson contends the trial judge erred by: (1) overruling his *Batson*[2] objection without stating her reasons on the record; (2) granting the directed verdict for Officer Thomure; (3) barring one of Hopson's witnesses from testifying; and (4) excluding character evidence during the trial. We affirm.

## I. BATSON OBJECTION

Only one of the seventeen prospective jurors was black. After unsuccessfully challenging this black venireman for cause, Fredericksen exercised his first peremptory challenge against him. Hopson, a black man, objected on the grounds that the challenge was racially motivated and relying on our opinion in *Reynolds v. City of Little*

---

1. The Honorable Carol E. Jackson, United States Magistrate Judge for the Eastern District of Missouri, to whom this matter was submitted for disposition pursuant to the consent of the parties. *See* 28 U.S.C. § 636(c).

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

*Rock,* 893 F.2d 1004, 1009 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2795, 115 L.Ed.2d 969 (1991), requested that Fredericksen state his reasons for striking the black venireman. Fredericksen's counsel stated three reasons: (1) the venireman was currently unemployed; (2) the venireman did not want to be there and was concerned about his livelihood; and (3) the venireman's mother had previously worked for an organization which assisted the public defender's office. After listening to Fredericksen's reasoning, and hearing no further comment about the matter from Hopson's lawyer, the trial judge said, "All right. Will one of you go and get the [jury] panel?" Without any objection, the panel returned. The judge permitted the peremptory challenge to the black venireman to stand. The jury was sworn in without him and the trial began.

▪ In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court articulated the steps necessary to establish whether use of peremptory challenges violates the Constitution. The complaining party must first make a prima facie showing by establishing that (1) he is a member of a cognizable racial group, (2) the exercising party used a peremptory challenge to remove a venire member of the complaining party's race, and (3) the complaining party must show that "these facts and any other relevant circumstances" raise an inference that the exercising party excluded the venire member on account of his race. *Id.* at 96, 106 S.Ct. at 1722.[3] The determination of whether the complaining party has made a prima facie showing is vested in the expertise of the trial judge and that determination "must be treated as a finding of fact entitled to great deference on review." *United States v. Moore,* 895 F.2d 484, 485–86 (8th Cir.1990). If a prima facie showing is made, the burden shifts to the exercising party "to come forward with a neutral explanation for

challenging black jurors." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. "[O]nce the [exercising party] has advanced his racially neutral explanation, the [complaining party] should have the opportunity to rebut with his own interpretation." *United States v. Roan Eagle,* 867 F.2d 436, 441 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989). "The trial court then will have the duty to determine if the [objecting party] has established purposeful discrimination." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1723–24. Hopson contests the district court's implicit finding that Fredericksen's counsel articulated neutral, nonracial reasons for striking the black venireman and requests a new trial on the basis that the trial judge failed to articulate on the record her reasons for overruling his *Batson* objection.

"The Supreme Court, because of differing jury selection procedures throughout the courts of this country, 'decline[d] ... to formulate particular procedures to be followed upon a [complaining party's] timely objection to [the exercising party's] challenges.'" *Moore,* 895 F.2d at 485 (quoting *Batson,* 476 U.S. at 99, 106 S.Ct. at 1724). "That responsibility was left to the individual judge's discretion." *Id.* "The Court did, however, instruct the trial judge that [s]he 'should consider all relevant circumstances.'" *Id.* (quoting *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23).

▪ We hold that Hopson failed to properly preserve this issue for appeal. After the trial judge listened to Fredericksen's reasons for striking the black venireman and requested the jury to return, Hopson did not object nor request the trial judge to articulate her reasons on the record for overruling the *Batson* objection. Nor does the record show that Hopson's counsel made any attempt to rebut the reasons advanced by Fredericksen's counsel when given the opportunity to do so. He simply proceeded to exercise his next

---

**3.** We note that elements one and two of the *Batson* prima facie analysis have been recently negated by the Supreme Court in *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (white defendant has standing to object to the use of peremptory challenges against black venire persons and to assert the equal protection rights of excluded jurors). For the record, we merely point out that Hopson satisfies even the original three-element *Batson* prima facie analysis.

strike. His failure to follow up on his *Batson* objection could have been reasonably construed by the trial judge as an agreement that the expressed reasons were racially neutral. Because Hopson failed to properly preserve this issue for appeal by failing to object at trial, we must review his claim under the plain error standard. *United States v. Schmidt,* 922 F.2d 1365, 1369 (8th Cir.1991). "Under this standard, we can only grant [Hopson] relief if the error 'would result in a miscarriage of justice if left uncorrected.'" *Id.* (quoting *United States v. Carey,* 898 F.2d 642, 644 (8th Cir.1990)). After carefully reviewing the record, we hold that the failure of the trial judge to articulate her reasons on the record did not result in a "miscarriage of justice" nor constitutes plain error. *See id.* We strongly suggest, however, that trial judges make an on-the-record ruling stating their reasoning with appropriate references to the underlying facts as they determine them to be. *See Moore,* 895 F.2d at 486.

## II. GRANT OF DIRECTED VERDICT

Hopson argues that the trial court erred by concluding that verbal threats alone do not establish a cognizable claim under 42 U.S.C. § 1983 and by directing a verdict for Officer Thomure. We affirm but based upon different reasoning.

■ Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim. *See Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985) (citing *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.), *cert. denied,* 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)). In *McFadden,* the court stated that "'mere threatening language and gestures of a [state actor] do not, even if true, amount to constitutional violations.'" *McFadden,* 713 F.2d at 146 (quoting *Coyle v. Hughs,* 436 F.Supp. 591, 593 (W.D.Okl.1977)). In determining whether the constitutional line has been crossed, a court must look to such factors as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Id.* (citation omitted).

"If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." *Id.* (citation omitted).

We have recognized an exception to this general rule, however. In *Burton v. Livingston,* 791 F.2d 97 (8th Cir.1986), after testifying against a prison guard in a § 1983 action, the prisoner was taken to the "holding tank" in the courthouse. The prisoner alleged that one of the accompanying guards pointed a pistol at the prisoner, cocked the trigger, and stated, "[N]igger run so I can blow your Goddamn brains out, I want you to run so I'll be justified." *Id.* at 99. Another guard who was present stepped between the prisoner and the gun-wielding guard. *Id.* at 100. Moments later, the gun-wielding guard repeated the threat. *Id.* Although "no measurable physical injury [resulted] to the prisoner," we concluded the prisoner had stated a claim that was entitled to be heard. *Id.* The complaint described "a wanton act of cruelty which, if it occurred, was brutal." *Id.* We held that "a prisoner retains at least the right to be free from the terror of instant and unexpected death at the whim of his allegedly bigoted custodians." *Id.*

■ In this case, Hopson alleges that he was placed alone in the back seat of the police car. Officers Fredericksen and Thomure sat in the front seat and began to question Hopson. After Hopson refused to answer any questions, Hopson claims Officer Thomure turned to Hopson, uttered a racial slur, and threatened to "knock [Hopson's] remaining teeth out of his mouth" if he remained silent.

Hopson contends this case closely resembles the *Burton* case. Hopson argues that he was faced, not with an "idle or random threat" by Officer Thomure, but instead with "colossal intimidation delivered in the midst of high drama." Brief for Plaintiff/Appellant at 16 (91–1149). We disagree. Unlike in *Burton,* Officer Thomure never threatened to kill Hopson. In fact,

Officer Thomure never brandished a lethal weapon. Notwithstanding the fact Officer Thomure threatened to inflict the same kind of injury allegedly inflicted on Hopson by Officer Fredericksen, nowhere has Hopson either alleged that he was physically assaulted by Officer Thomure or that Officer Thomure raised his fists or made any type of physical gesture toward him. Although such conduct is not to be condoned, Officer Thomure's alleged conduct failed to rise to the level of a "brutal" and "wanton act of cruelty." *See Burton,* 791 F.2d at 100. We find this case distinguishable from *Burton. Cf. Hudson v. McMillian,* — U.S. —, 112 S.Ct. 995, 1004, 117 L.Ed.2d 156 (1992) (Blackmun, J., concurring opinion) (de minimus infliction of psychological pain is not actionable under the Eighth Amendment).

■ In reviewing the grant of a directed verdict, we must "(1) resolve direct factual conflicts in favor of [Hopson], (2) assume as true all facts supporting [Hopson] which the evidence tended to prove, (3) give [Hopson] the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." *Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375 (8th Cir.1983) (citations omitted). Applying this standard, we find that no reasonable juror could find that Hopson's allegations constitute a cognizable constitutional claim under § 1983. The directed verdict was proper.

## III. EXCLUSION OF A WITNESS

■ Hopson next argues that the trial judge erred in refusing to allow the introduction of the testimony of an individual whom Hopson had not accurately identified as a witness pursuant to the court's pretrial order. We disagree.

"It is fundamental that it is within the trial court's discretionary power whether to allow the testimony of witnesses not listed prior to trial." *Blue v. Rose,* 786 F.2d 349, 351 (8th Cir.1986) (citations omitted). "A ruling by the district court pertaining to this matter will be overturned only if there is a clear abuse of discretion." *Id.* In this case, Fredericksen's counsel was not made aware of the witness until the day before the trial began even though Hopson's counsel had known of this witness ten or eleven days before trial. No reason has been offered and none appears indicating why Hopson could not have identified his witness in a more timely fashion. We find the trial court did not abuse its discretion in excluding the witness.

## IV. EXCLUSION OF EVIDENCE

■ Finally, Hopson argues that the trial court erred by excluding evidence of internal police department records concerning prior allegations of abuse made against both Fredericksen and Thomure. Fredericksen contends that the information is impermissible under Federal Rules of Evidence 404 and 803. We agree with Fredericksen.

■ Hopson frames the issue in his brief as follows: "The district court erred in granting defendant's motion in limine with respect to plaintiff's exhibits Nos. 9 and 10 *which illustrated the proclivity of defendants to engage in the conduct alleged within plaintiff's complaint.*" Plaintiff–Appellant's Brief at vii (emphasis added). "Evidence of other ... acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). Showing a "proclivity to engage" in conduct is the same as showing a propensity to engage in conduct and both are prohibited by the Rule. *See United States v. Madia,* 955 F.2d 538, 540 (8th Cir.1992).

■ We review a trial judge's decision to exclude evidence under the abuse of discretion standard. *United States v. Ferguson,* 776 F.2d 217, 224 (8th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986) (citation omitted). After careful review, we find that it was not an abuse of discretion to exclude the unsubstantiated evidence of prior conduct.

## V. CONCLUSION

The order and judgment of the district court is affirmed.